Jason Crews
1515 N Gilbert Rd Ste 107-204
Gilbert, AZ 85234
602-295-1875
Jason.crews@gmail.com

*In propria persona*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT ARIZONA

PHOENIX DIVISION

| | |
|---|---|
| Jason Crews, | Case No.: 2:24-cv-02227-JZB |
| Plaintiff, | |
| vs. | Complaint for Violations of: |
| Benavest, Corp , | 1.      NEGLIGENT VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT [47 U.S.C. §227 ET SEQ.] |
| Aetna, Inc, | |
| ~~One Pillarmark Media,~~ | |
| ~~Ikechukwu N Ezueh,~~ | |
| ~~and~~ and | 2.      WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT [47 U.S.C. §227 ET SEQ.] |
| Joseph Gannon, | |
| Defendants. | |
| | DEMAND FOR JURY TRIAL |

///

COMPLAINT- 1

## COMPLAINT

### Preliminary Statement

1.    "When it comes to robocalls, you can only call those who, like Blondie, have said, "Call me. Call me on the line." If you call people who haven't opted in , then you face liability under the Telephone Communications Protection Act." *Perrong v. Bradford*, 2024 WL 2133801, at *1 (E.D. Pa. May 13, 2024).

2.    Plaintiff Jason Crews ("Plaintiff") brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C § 227, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance calling practices. See *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012).

~~The Defendants in this action Benavest, Corp , Joseph Gannon, One Pillarmark Media,~~ ~~And Ikechukwu N Ezueh, orchestrated placing at least two (2) illegal telemarketing calls using an Automated Telephone Dialing System ("ATDS") to a number assigned to a cellular service which was included on the national Do-Not-Call List.~~

3.The Defendants in this action Benavest, Corp , Joseph Gannon, and Aetna, Inc, orchestrated placing at least fourteen (14) illegal telemarketing calls using an Automated Telephone Dialing System ("ATDS") to a number assigned to a cellular service which was included on the national Do-Not-Call List.

~~3.~~4.  Plaintiff never consented to receive such messages.

### Parties

~~4.~~5.  Plaintiff Jason Crews ("Crews") is and was a resident of Maricopa County, Arizona at all relevant times, and a resident of this District.

6.Defendant Benavest, Corp ("Benavest"), incorporated in Florida, doing business as Benavest, and is in the business of selling life insurance, health insurance, Medicare supplements, dental insurance, vision insurance, and other financial products to the public.

COMPLAINT- 2

5.7.  Defendant Aetna, Inc ("Aetna"), incorporated in Deleware, doing business as Banner Aetna, and is in the business of selling various health insurance products to the public.

6.Defendant One Pillarmark Media, LLC ("Pillarmark"), incorporated in Florida, doing business as Benavest, and is in the business of selling life insurance, health insurance, Medicare supplements, dental insurance, vision insurance, and other financial products to the public.

7.8.  Defendant Ikechukwu N Ezueh ("Ezueh"), a resident of St. Lucie County, Florida, was at all times relevant the owner and manager of Pillarmark who directed and authorized the illegal calls complained of herein.

8.9.  Defendant Joseph Gannon ("Gannon"), a resident of St. Lucie County, Florida, was at all times relevant the owner and manager of Pillarmark Benavest who directed and authorized the illegal calls complained of herein.

## Jurisdiction & Venue

9.10.   The Court has federal question subject matter jurisdiction over these TCPA claims: *Mims v. Arrow Fin. Services, LLC*, 132 S. Ct. 740 (2012).

10.11.  The Court has specific personal jurisdiction over the Defendants because the defendants caused the events complained herein to occur in Arizona out of which the TCPA claims arose, and the defendants had minimum contacts with Arizona to justify assertion by an Arizona court of personal jurisdiction, *Meyers v. Hamilton Corp.*, 693 P.2d 904 (Ariz. 1985). Defendants intentionally called or caused Plaintiff's number to be called by dialing an Arizona area code at least two (2) times within a twelve month period to advertise their services despite Plaintiffs number being listed on the national do not call registry in violation of the TCPA. Additionally, Benavest and their representatives are licensed to sell insurance by the State of Arizona.

## Venue

COMPLAINT- 3

11. 12.  The venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District, as the calls to Plaintiff were placed into this District.

## The Telephone Consumer Protection Act

8.    In 1991, Congress enacted the TCPA to regulate the explosive growth of the automated calling industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[.]": Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

9.    Under the TCPA, individuals such as Gannon and Ezuch may be personally liable for the acts alleged in this Complaint pursuant to 47 U.S.C. § 217 of the TCPA, which reads, inter alia:

> [T]he act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, Case 2:22-cv-02724-ER Document 1 Filed 07/11/22 Page 2 of 11 3 shall in every case be also deemed to be the act, omission, or failure of such carrier or user as well as of that person. 47 U.S.C. § 217 (emphasis added).

10.  In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

11.  The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either 5 section 227(b) or section 227(c) that are committed by third-party telemarketers." In the Matter of the Joint Petition Filed by Dish Network, LLC, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013). 22. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

COMPLAINT- 4

12.  When considering individual liability under the TCPA, other Courts have agreed that an officer or individual involved in the telemarketing at issue may be personally liable under the TCPA. See, e.g., *Jackson Five Star Catering, Inc. v. Beason*, 2013 U.S. Dist. LEXIS 159985, *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute.") (cleaned up) and *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415-16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

13.  Gannon ~~and Ezuch~~ personally participated in the complained-of actions by personally directing and authorizing the scripting and selecting of calls to be made, selecting, and orchestrating the calling strategy, including by choosing to use pre-recorded calls.

## Factual Allegations

14.  To promote their services Defendants also relied on the use of ATDS systems.

15.  Plaintiff had no prior business relationship with Defendants.

16.  Plaintiff is a "person" as defined by 47 U.S.C. § 153(39).

17.  Defendant Gannon is a "person" as defined by 47 U.S.C. § 153(39).

18.  Defendant Benavest is a "person" as defined by 47 U.S.C. § 153(39).

~~17.~~19.  Defendant Aetna is a "person" as defined by 47 U.S.C. § 153(39).

~~18.  Defendant Ezuch is a "person" as defined by 47 U.S.C. § 153(39).~~

~~19.~~20.  The phone number (602) 295-XXXX ("Cell Number") belongs to Plaintiff.

21.  The Cell Number has been on the Do-Not-Call registry since November 7, 2006.

~~20.~~22.  Crews registered his Cell Number personally on the Do-Not-Call registry.

~~21.~~23.  Despite this registration, Defendants placed the calls summarized in the following table with an Automated Telephone Dialing Systems ("ATDS").

| Date | Time | Caller ID |
|------|------|-----------|
| 1/4/2023 | 9:31 AM | (602)892-5536 |

| | | |
|---|---|---|
| 1/12/23 | 2:08 PM | (602)269-4029 |
| 1/18/23 | 3:07 PM | (480)337-2492 |
| 1/20/23 | 10:28 AM | (602)289-3869 |
| 1/31/23 | 11:00 AM | (480)805-3385 |
| 1/15/24 | 10:36 AM | (404)726-5776 |
| 1/31/24 | 8:12 AM | (775)408-4757 |
| 2/8/24 | 12:40 PM | (775)408-4757 |
| 3/5/24 | 10:13 AM | (602)295-1598 |
| 4/5/24 | 2:54 PM | (801)780-9304 |
| 4/8/24 | 9:27 AM | (828)235-5922 |
| 4/16/24 | 1:52 PM | (602)898-5660 |
| ~~3/5/24~~ | ~~10:13 AM~~ | ~~(602) 295-1598~~ |
| 4/25/25 | 9:48 AM | (602)295-2967 |
| 5̲4/14/24 | 8:16 AM | (602) 562-2817 |

~~22.~~24.  The Cell Number is assigned to a cellular phone used exclusively for personal residential purposes.

~~23.~~25.  Plaintiff did not consent to receive telephone calls via ATDS.

~~24.~~ The Cell Number is not associated with a business.

Calls to Plaintiff

~~25.~~26.  On or about March 5, 2024, at 10:13 am, Plaintiff received a call presenting caller ID(602) 295-1598.

~~26.~~27.  After speaking with various individuals and being transferred a number of times Plaintiff was greeted by an individual who identified themselves as Brent Harris ("Harris").

~~27.~~28.  Brent Harris claimed to represent Benevest.

29.  During the course of their conversation, Brent sent Plaintiff ~~an~~ agreement via ~~email~~ text message which identified Harris and Benavest.

30.  The message read -"Hey, this is Brent Harris your Licensed Agent from the Health Enrolment Center it was a pleasure speaking with you today. Please reach out to me

COMPLAINT- 6

1  with any questions or concerns regarfing your policy.  Below is your consent form fill it out

2  at your earliest convenience, thanks!"

3      31.  The message contained the now dead link,

4  https://fill.boloforms.com/signiture/7e18ae17-d75a-46a4-a25f-acbf6c2f77a7?p=view,

5  which prominently identified Defendant Benavest.

6      28.32.  When Crews visited the link, he was presented with a form that prominently

7  identified Benavesrt and Harris.

8      29.33.  On or about May 14, 2024, at 8:16 am, Plaintiff received a call presenting

9  caller ID (602) 562-2817.

10     30.34.  Again, after speaking with various individuals and being transferred a number

11 of times Plaintiff was greeted by an individual who identified themselves as Arslanamin

12 Shah ("Shah").

13     31.35.  Shah claimed to represent Benevest.

14     36.  During the course of their conversation, Brent sent Plaintiff an agreement via

15 email and a text message which identified Shah and Benavest.

16     37.  The text message read "Hey, this is Arslan Shah your Licensed Agent from the

17 Health Enrolment Center it was a pleasure speaking with you today. Please reach out to me

18 with any questions or concerns regarfing your policy.  Below is your consent form fill it out

19 at your earliest convenience, thanks!"

20     38.  The message contained the now dead link,

21 https://fill.boloforms.com/signiture/d8c2d8c2-1fa9-411f-b5df-76555d63ec5d?p=view,

22 which prominently identified Defendant Benavest.

23     39.  When Crews visited the link, he was presented with a form that prominently

24 identified Benavesrt and Shah.

25     40.  On or about May 14th, 2024, at 8:32 am, Shah sent Crews an email ("EzHealth

26 Email") from noreply@benefitalign.com with the subject line "Your Eligibility Verification

27 ahs been completed", which prominently identified BenaVest.

28     41.  The EzHealth Email provided a "Benavest Customer ID"

COMPLAINT- 7

32.  On or about May 14th, 2024, at 8:32 am, Shah sent Crews an email ("BannerAetna Email") from noreply@benefitalign.com with the subject line "Congratulations on successful enrollment – Follow up required".

42.  The BannerAetna Email  identified the "Carrier Name" as BannerAetna,  and the "Agent of Record" as Artslanamin Shah.

43.  On or about May 14th, 2024, at 8:39 am, Shah sent Crews an email ("Shah Email") from asjaj@shahinsurance.info with the subject line "Short terms plans for ACA Non Qualifiers".

44.  The Shah Email prominently identified BenaVest and provided a contact address of 3043 Johnson St, Hollywood, FL 33021.

33.45.  On or about May 19, 2024, Plaintiff sent an email to Defendant Benavest requesting any evidence of consent in their possession, to be placed on their internal do-not-call list, and again requested a copy of their DNC Policy.

34.46.  Plaintiff avers and therefor believes Defendants failed to produce their DNC Policy because no such policy exists.

35.47.  On May 21, 2024, Plaintiff received an email from an individual claiming to be Mary Johnson ("Johnson").

36.48.  Johnson claimed to work for Pillarmark.

37.49.  Johnson admitted to placing at least one calling on behalf of Benavest.

38.50.  Defendants did not send Plaintiff a copy of their DNC Policy.

39.51.  Plaintiff avers and therefore believes this is because no such DNC Policy existed.

### Defendants' Use of an ATDS

40.52.  Benavest's called frequently and from various different numbers.

41.53.  Benavest's representatives used the identical or nearly identical scripts.

42.54.  Benavest's representatives purposefully attempted to conceal the identity of their company.

COMPLAINT- 8

43.55.  For these reasons, Plaintiff believes the telemarketers used an ATDS to generate leads for Defendant's debt relief services.

44.56.  The calls were conducted using an Automatic Telephone Dialing System (ATDS). As the Supreme Court recently clarified, the key feature of an ATDS is the capacity to store numbers to be called using a random or sequential number generator or to produce numbers to be called using a random or sequential number generator: *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1167 (2021).

45.57.  The Third Circuit recently clarified that "Congress envisioned a broad understanding of 'equipment'" that constitutes an ATDS. It also clarified that the analysis of whether an ATDS was used in violation of the TCPA centers around "whether the Defendants employ[s] [ATDS] capacities to make automated calls": *Panzarella v. Navient Sols., Inc.*, 37 F.4th 867, 873, 878 (3d Cir. 2022). In so doing, it held that Congress intended to "ban all autodialed calls" because Congress "found autodialer technology to be uniquely harmful": Id. at 879 (cleaned up).

46.58.  In enacting the ATDS prohibition, the Third Circuit cited favorably to Congressional understanding "that telemarketers could transform ordinary computers into autodialers through minor and inexpensive modifications," including by "relying on computerized databases containing telephone numbers during their dialing campaigns": Id. at 880 (cleaned up). The Third Circuit held that, in passing the TCPA's ATDS prohibition, Congress intended to remedy the problems caused by callers using computer software to dial numbers randomly or sequentially from a list or database: *Id.*

47.59.  The system(s) that Defendants used to place the calls to Plaintiff is/are an ATDS because it would be illogical to dial a number manually, have Plaintiff answer the phone, and only then connect Plaintiff to a human being.

48.60.  Audible pauses, clicks, and beeps are hallmark indicia of ATDS systems. This supports the inference that Defendants used an ATDS, such as one that "use[s] a random [or sequential] number generator to determine the order in which to pick phone numbers from a pre-produced list": *Facebook*, 141 S. Ct. at 1171 n.7.

COMPLAINT- 9

49.61.  Other courts have held, post-Facebook, that allegations similar to those herein of the absence of a relationship between the parties, and the random nature of the automation device (such as the ability to randomly generate caller ID numbers), are all indicia of use of a random or sequential dialing device. This gives rise to the inference at the pleadings stage that an ATDS was used to make the calls: *Camunas v. Nat'l Republican Senatorial Comm.*, No. 21-1005, 2021 U.S. Dist. LEXIS 100125 at *11 (E.D. Pa. May 26, 2021).

50.62.  No facts exist here to support the conclusion that Defendants was calling from a curated list of his past customers. In contrast to a company that dials calls en masse to multiple individuals from a list of telephone numbers (as here), a company that calls its existing customers utilizing an imported customer list does not place calls using an ATDS. Such calling uses a database targeting existing customers' information rather than computer-generated tables or lists of individuals to be called: *Panzarella*, 37 F.4th at 881–882.

51.63.  Plaintiff is ignorant of the exact process by which the system(s) used by Defendants operates other than by drawing the reasonable inference and alleging that the system(s) stores or produces telephone numbers randomly or possibly sequentially based on the facts ascertainable from the calls Plaintiff received, as outlined above. Indeed, as at least one district court explained, "The newly clarified definition of an ATDS is more relevant to a summary judgment motion than at the pleading stage": *Gross v. GG Homes, Inc.*, No. 3:21-cv-00271-DMS-BGS, 2021 WL 2863623, at *7 (S.D. Cal. July 8, 2021); accord *Miles v. Medicredit, Inc.*, No. 4:20-cv- 01186-JAR, 2021 WL 2949565 (E.D. Mo. July 14, 2021).

**Defendants' Conduct Was Knowing and Willing**

52.64.  Defendants intentionally called Plaintiff multiple times in order to advertise their services to Plaintiff.

53.65.  Defendants knew their actions were in violation of the TCPA and willfully continued their conduct calling Plaintiff multiple times despite the registration of his number on the National Do-Not-Call List, and direct request not to be called.

COMPLAINT- 10

**Gannon's ~~and Ezueh's~~ Personal Liability**

~~54.~~66.  Defendant Gannon ~~and Ezueh~~ personally participated in the calls at issue because Gannon ~~and Ezueh~~ personally directed the calls to be transmitted throughout the United States including numbers with Arizona area codes of which he knew were likely to belong to individuals, such as Plaintiff, who reside there.

~~55.  Gannon is the principal officer of Defendant Benavest.~~

~~56.~~67.  ~~Ezueh is the principal officer of Defendant Pillarmark.~~

~~57.~~68.  Gannon closely holds Defendant Benavest and is intimately involved in all decision making and legal activities of Defendant Benavest.

~~58.  Ezueh closely holds Defendant Pillarmark and is intimately involved in all decision making and legal activities of Defendant Pillarmark.~~

~~59.~~69.  Gannon made the decision to hire agents such as ~~Defendant Lopez~~Harris and Shah who are licensed in Arizona, approved of training employees such as ~~Lopez~~ Harris and Shah on the use of proprietary technology, and directed his employees to use the technology with the intention of breaking state and federal laws.

~~60.~~70.  Defendant Gannon has direct and personal involvement in and ultimate control over every aspect of Defendant Benavest's wrongful conduct that violated the TCPA, and/or directly controlled and authorized this conduct.

~~61.  Defendant Ezueh has direct and personal involvement in and ultimate control over every aspect of Defendant Benavest's wrongful conduct that violated the TCPA, and/or directly controlled and authorized this conduct.~~

~~62.~~71.  Defendant Gannon at all times relevant to this Complaint acting alone or in concert with others, formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint.

~~63.  Defendant Ezueh at all times relevant to this Complaint acting alone or in concert with others, formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint.~~

64.72.  There is precedent holding corporate officers personally liable when they participate in the alleged actions: "If the officer directly participated in or authorized the statutory violation, even though acting on behalf of the corporation, he may be personally liable. See United States v Pollution Serv. Of Oswego, Inc., 763 F.2d 133, 134-135 (2nd Cir.1985) The "well-settled" tort rule provides that "when corporate officers directly participate in or authorized the commission of a wrongful act, even if the act is done on behalf of the corporation, they may be personally liable." General Motos Acceptance Corp. v. Bates, 954 F.2d 1081, 1085 (5th Cir. 1992). The Fifth Circuit has elaborated that "the thrust of the general [tort] rule is that the officer to be held personally liable must have some direct, personal participation in the tort, as where the defendant was the 'guiding spirit' behind the wrongful conduct….or the 'central figure' in the challenged corporate activity." Mozingo v. Correct Mfg. Corp., 752 F.2d 168, 174 (5th Cirt. 1985) (Citing Escude Cruz v. Ortho Pharmaceutical Corp., 619 F. 2d 902, 907 (1st Cir.1980)) (Citing Texas v. American Blastfax, Inc., 164 F. Supp. 2d 892 (W.D. Tex. 2001) Quoting Texas v. American Blastfax: The Court finds the above principles applicable to the TCPA that is, an officer may be personally liable under the TCPA if he had direct, personal participation in or personally authorized the conduct found to have violated the statute, and was not merely tangentially involved. Individuals who directly (and here, knowingly and willfully) violate the TCPA should not escape liability solely because they are corporate officers. As the State persuasive argues, to hold otherwise would allow the individual defendants to simply dissolve Blastfax, set-up a new shell corporation, and repeat their conduct. Congress surely did not intend to permit such a result in passing the TCPA. To be clear, the Court finds Greg and Michael Horne were the "guiding spirits" an the "central figures" behind the TCPA violations. They were the two persons who controlled all of Blastfax's day-to-day operations. They both had direct, personal involvement in and ultimate control over every aspect of Blastfax's wrongful conduct that violate the TCPA, and/or directly controlled and authorized this conduct. And they did so with their eyes and pocketbooks wide open. After October 5, 2000, Greg and Michael Horne had good reason to believe they were running a business that violated the

COMPLAINT- 12

TCPA. On February 9, 2001, they knew they were. Yet they continued to direct their company to send unsolicited intrastate fax advertisements. This is far more than a simple derivative liability case. Accordingly, the Court *899 holds defendants Greg and Michael Horne are jointly and severally liable with Defendant Blastfax, Inc., for all TCPA damages in this lawsuit." Texas v. American Blastfax, Inc., 164 F. Supp. 2d 892 (W.D. Tex. 2001).

65.73.  The Same Court held that corporate officers were also personally liable for DTPA violations; The State contends Greg and Michael Horne are personally liable for any DTPA damages because they were solely responsible for the violating conduct…..For the same reasons discussed in finding the individual defendants personally liable under the TCPA, the Court agrees. See, e.g., Barclay v. Johnson, 686 S.W.2d 334, 336-37 (Tex. Civ. App.-Houston [1ST Dist.] 1985, no writ) (finding personal liability for corporate officer in DTPA misrepresentation claim, based on general rule that "a corporate agent knowingly participating in a tortious of fraudulent act may be held individually liable, even though he performed the act as an agent for the corporation……Accordingly, the Court finds defendants American Blastfax, Inc., Greg Horne and Michael Horne are jointly and severally liable for $6,000 in damages for their violations of the DTPA." Texas v. American Blastfax, Inc., 164 F. Supp. 2d 892 (W.D. Tex. 2001).

66.74.  Defendant Gannon is the CEO of Benavest and controls the day-to-day operations of Benavest and directs his employees, agents, salespersons, and solicitors to make TCPA-violating phone calls.

67.75.  Defendant Ezueh is the CEO of Benavest and controls the day-to-day operations of Pillarmark Benavest and directs his employees, agents, salespersons, and solicitors to make TCPA-violating phone calls.

68.76.  Defendant Gannon is not merely a bystander. He is the mastermind that schemed, planned, directed, initiated, and controlled illegal and fraudulent behavior.

69.  Defendant Ezueh is not merely a bystander. He is the mastermind that schemed, planned, directed, initiated, and controlled illegal and fraudulent behavior

70.77.  Defendant Gannon is well aware their conduct violated the TCPA and refused to alter their behavior. Defendant Gannon is the principal director and officer of Defendant Benavest and the only person with the power to make unlawful, fraudulent, and unethical behavior stop.

71.  Defendant Ezuch is well aware their conduct violated the TCPA and refused to alter their behavior. Defendant Ezuch is the principal director and officer of Defendant Benavest and the only person with the power to make unlawful, fraudulent, and unethical behavior stop.

72.78.  Defendant's calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy.

**Vicarious Liability**

73.79.  Defendant Benavest Aetna through their authorized representative Pillarmark Benavest made multiple auto-dialed robocalls to Plaintiff.

74.80.  Pillarmark Benavest used utilized software provided by BenavestAetna.

75.81.  Pillarmark Benavest used proprietary information and systems provided by Defendant BenavestAetna.

76.82.  Benavest Aetna authorized Pillarmark Benavest to make the phone calls at issue here.

77.83.  Benavest Aetna was aware of the phone calls being made by Pillarmark Benavbest and accepted referrals from Pillarmark Benavest pursuant to the authorization provided to Pillarmark Benavest by BenavestAetna.

78.84.  Benavest Aetna gave access to their proprietary systems and software to Defendant PillarmarkBenavest.

79.85.  Benavest Aetna hired an offshore telemarketer to make phone calls on their behalf. Pillarmark Benavest is the agent of Benavest Aetna and the offshore telemarketer is the subagent of Benavest.

80.86.  The offshore telemarketer made the phone calls at the direction and control of Benavest.

COMPLAINT- 14

81.87.  Benavest exercised interim control over whom and under what conditions referrals would be accepted.

82.88.  Benavest has been aware of the TCPA-violating phone calls made by salespersons for years and has ratified the behavior by maintaining the salespeople responsible for the violations and continuing to accept referrals despite the knowledge of the violations.

83.89.  Gannon ~~and Ezuch~~ has made telemarketing in violation of the TCPA a regular source of referrals in multiple organizations in which he is associated.

84.90.  A defendant may be held vicariously liable for Telephone Consumer Protection Act (TCPA) violations where the plaintiff establishes an agency relationship, as defined by federal common law, between the defendant and a third-party caller. Telephone Consumer Protection Act of 1991, § 3(a), 47 U.S.C.A. § 227(b)(2). *Gomez v. Campbell-Ewald Co.*, 768 F.3d 872, 11 (9th Cir. 2014).

### The TCPA Prohibits All Automated Calls to Protected Numbers

85.91.  The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automated telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the party is charged for the call": 47 U.S.C. § 227 (b)(1)(A)(iii).

86.92.  Congress singled out these services for special protection because Congress realized their special importance in terms of consumer privacy (as is the case with cellular phones): *Barr v. Am. Ass'n of Pol. Consultants Inc.*, 140 S. Ct. 2335, 2356, (2020) (Gorsuch, J. & Thomas, concurring in part and dissenting in part).

87.93.  According to findings by the Federal Communications Commission ("FCC"), which is the agency Congress vested with the authority to issue regulations implementing the TCPA, such messages are prohibited because, as Congress found,

COMPLAINT- 15

automated or prerecorded messages are a greater nuisance and invasion of privacy than live ones, are costly, and are inconvenient.

88.94.  The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). 47 U.S.C. § 227(b)(1)(3).

89.95.  These causes of action apply to users of any of four protected services (pager, cellular, specialized mobile radio [i.e., radio telephony locator beacon or dispatch system], or another radio common carrier service [i.e., ship-to-shore or air-to-ground]), or any service, including residential, VoIP, and landline services, for which the called party is charged: *Lynn, Monarch Recovery Mgmt. Inc.*, 953 F. Supp. 2d 612, 623, (D. Md. 2013).

90.96.  "Non-Emergency pre-recorded voice or autodialed calls to the destinations enumerated in 47 U.S.C. § 227(b)(1)(A) are permissible only with the prior express consent of the called party."

91.97.  U.S.C. § 227(c)(2) states, "No person or entity shall initiate any telephone solicitation to … [a] residential telephone subscriber who has registered his or her telephone number on the National Do-Not-Call Registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government" and defines "telephone solicitation" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person…": U.S.C. § 227(f)(15).

92.98.  The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used": In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014, 14115, ¶ 165 (2003).

93.99.  In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered:

> [A] Consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf

of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service."

94.100.   *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 (2012) (footnotes omitted).

95.101.   47 C.F.R. § 64.1200 extends 47 U.S.C. § 227 and establishes several delivery restrictions. It states, "No person or entity may … [e]xcept as provided … initiate any telephone call … using an automatic telephone dialing system or an artificial or prerecorded voice."

96.102.   47 C.F.R. § 64.1200(a)(1) specifically protects the following: "emergency telephone line," "guest room or patient room of a hospital, health care facility, elderly home, or similar establishment," and/or "cellular telephone service." 47 C.F.R. § 64.1200(a)(2) further prohibits entities from "initiat[ing], or caus[ing]to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any of the lines or telephone numbers described… "

97.103.   The National Do-Not-Call Registry allows consumers to register their telephone numbers and thereby indicate their desire to not receive telephone solicitations at those numbers: 47 C.F.R. § 64.1200(c)(2).

98.104.   A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator": *Id.*

99.105.   The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers whose numbers are on the Registry and provide a private right of action against any entity making those calls or "on whose behalf" such calls are promoted: 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

100.106. 47 C.F.R. § 64.1200(d) states, "No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive

telemarketing calls made by or on behalf of that person or entity." It goes on to establish specific "minimum standards":

> (1) "Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand…"
>
> (2) "[P]ersonnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list."
>
> (3) "If a person or entity making a call for telemarketing purposes … receives a request … not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name … and telephone number on the do-not-call list at the time the request is made … must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made."
>
> (4) "A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted."
>
> (5) "A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls."

## Claims

## Count One

~~101.~~107.  Plaintiff incorporates the foregoing allegations as fully set forth herein.

~~102.~~108.  The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute violations of the TCPA, 47 U.S.C. § 227, by sending calls, except for emergency purposes, to Plaintiff's telephone which is assigned to a cellular telephone service using an ATDS.

~~103.~~109.  As a result of their unlawful conduct, Defendants invaded Plaintiff's personal privacy, causing Plaintiff to suffer damages and, under 47 U.S.C. § 227(b)(3)(B), entitling him to recover $500 in civil fines for each violation and an injunction requiring Defendants to stop his illegal calling campaign.

~~104.~~110.  Plaintiff is also entitled to and does seek injunctive relief prohibiting Defendants and/or his affiliates, agents, and/or other persons or entities acting on Defendants' behalf from violating the TCPA, 47 U.S.C. § 227, by making calls or sending

messages, except for emergency purposes, to any number using an artificial or prerecorded voice in the future.

~~105.~~111.  Plaintiff is entitled to an award up to $1500 in damages for each knowing and willful violations of 47 U.S.C. § 227(b)(3)(B)

~~106.~~112.  Defendants' violations were willful and/or knowing.

## Count Two

~~107.~~113. Plaintiff incorporates the foregoing allegations as fully set forth herein.

~~108.~~114. Defendants called Plaintiff's private residential telephone number which was registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls, in violation of 47 U.S.C. § 227(c)(3)(F) and 47 C.F.R. § 64.1200(c)(2).

~~109.~~115. As a result of their unlawful conduct, Defendants invaded Plaintiff's personal privacy, causing Plaintiff to suffer damages and, under 47 U.S.C. § 227(c)(3)(F) entitling him to recover $500 in civil fines for each violation and an injunction requiring Defendants to stop his illegal calling campaign.

~~110.~~116. Plaintiff is entitled to an award up to $1500 in damages for each knowing and willful violations of 47 U.S.C. § 227(c)(3)(F).

~~111.~~117. Defendants' violations were willful and/or knowing.

## Count Three

### Violation of the Florida Telephone Solicitation Act,

### Fla. Stat. § 501.059

~~112.~~118.  Plaintiff incorporates the foregoing allegations as fully set forth herein.

~~113.~~119.  It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

~~114.~~120.  A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer

COMPLAINT- 19

goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

115.121.  Defendants failed to secure prior express written consent from Plaintiff.

116.122.  In violation of the FTSA, Defendant made and/or knowingly allowed telephonic sales calls to be made to Plaintiff without Plaintiff's prior express written consent.

117.123.  Defendants made and/or knowingly allowed the telephonic sales calls to Plaintiff to be made utilizing an automated system for the selection or dialing of telephone numbers.

118.124.  As a result of Defendants' conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff was harmed and are each entitled to a minimum of $500.00 in damages for each violation. *Id.*

**Relief Sought**

WHEREFORE, Plaintiff requests the following relief:

A. Injunctive relief prohibiting Defendants from calling telephone numbers using an artificial or prerecorded voice and/or ATDS.

B. Because of Defendants' violations of the TCPA, Plaintiff seeks for himself $500 in damages for each violation or—where such regulations were willfully or knowingly violated—up to $1,500 per violation, pursuant to 47 U.S.C. § 227(b)(3).

C. Because of Defendants' violations of the TCPA, Plaintiff seeks for himself $500 in damages for each violation or—where such regulations were willfully or knowingly violated—up to $1,500 per violation, pursuant to 47 U.S.C. § 227(c)(3).

D. Because of Defendants' violations of the FTSA, Plaintiff seeks for himself $500 in damages for each violation or—where such regulations were willfully or knowingly violated—up to $1,500 per violation, pursuant to Fla. Stat. § 501.059.

E. Such other relief as the Court deems just and proper.

COMPLAINT- 20

RESPECTFULLY SUBMITTED on this October 5, 2024.

_____

Jason Crews

COMPLAINT- 21